UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER PINTO | No. 3:12-cr-101 (SRU) |

# ORDER OF RESTITUTION

On May 11, 2012, the defendant, Peter Pinto, pleaded guilty to one count of conspiracy to commit wire fraud, bank fraud, and money laundering in violation of 18 U.S.C. § 371, and one count of wire fraud in violation of 18 U.S.C. § 1343. (doc. 16) Pinto then made six motions to continue sentencing (docs. 26, 35, 48, 63, 79, 88), all of which I granted. On December 17, 2013, Pinto was sentenced to two terms of imprisonment, as well as restitution in an amount to be determined by a subsequent hearing; the judgment of conviction entered on January 7, 2014. (doc. 102)

Pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663 *et seq.* ("the "MVRA"), Pinto is now ordered to pay **$10,593,149.99** in restitution, to be distributed according to the schedule attached to this Order.

A.  Delay in Setting Amount of Restitution

The MVRA states that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). That deadline has not been met in this case; however, in *Dolan v. United States*, 560 U.S. 605 (2010), the Supreme Court unequivocally stated that such a delay is not fatal to a district court's ability to award restitution:

> We hold that a sentencing court that misses the 90–day deadline nonetheless retains the power to order restitution—at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount.

*Id.* at 608; *see also id.* at 613–14 ("[T]o read the statute as depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline's being missed and whom the statute also seeks to benefit.").

In the present case, at Pinto's sentencing on December 19, 2013, I ordered that restitution was to be awarded in an amount to be determined, that the amount was payable immediately and that the remainder should be paid at the commencement of Pinto's supervised released at a rate of no less than $500 per month. *See* Sentencing Tr. at 30 (doc. 112).

The government filed its first motion to adopt a proposed restitution order on January 20, 2014. (doc. 103) Pinto subsequently made four motions for extension of time to respond, (docs. 105, 109, 115, 117), based on the counsel's difficulty communicating with his client and on-going discussion between the government and Pinto regarding issues in the first restitution order, all of which I granted in order to give the parties time to resolve their disputes.

On August 21, 2015, the government filed a motion to adopt an updated restitution order that reflected some of the negotiations between the parties, including several reductions based on Pinto's assertions regarding the losses suffered by specific clients. (doc. 123) Specifically, Pinto asserted that the investor victims were repaid more than the government acknowledges. I held a phone conference on September 18, 2015 to discuss any remaining disputes between the parties. (doc. 127) During that conference, I asked Pinto's counsel to confer further with his client to determine whether he wished to change his position regarding an argument that was apparently

foreclosed by his Stipulation of Offense Conduct. *Id.* On September 22, 2015, Pinto's counsel affirmed that Pinto did not wish to change his position.

In sum, the holding in *Dolan* clearly applies to this case, where only the amount of restitution was left open at the time of Pinto's sentencing, Pinto himself was responsible for considerable delays in determining that amount, and where an inability to grant restitution would only harm the victims of Pinto's illegal scheme.

B.  Amount of Restitution

Pursuant to the MVRA, 18 U.S.C. § 3664(e), I must resolve a dispute about restitution by the preponderance of the evidence. The burden for showing loss amount rests with the government. *Id.*

Pinto argues that the government has still not met that burden, and requests that the government conduct additional investigations and provide him with additional documentation. Def.'s Letter to Underhill, J. (Sep. 15, 2015, doc. 126). The government explained in the phone conference that, given the nature of the offense, which involved payments that were collected by Pinto on the false premise that he was acting on the victims' behalf, further documentation from the victims was not available. Moreover, the government asserted that, with respect to the client losses, the only records that exist were those in the possession of one of Pinto's co-conspirators. With respect to a contested line of credit, the government pointed out that Pinto had stipulated in his plea agreement that he caused one of the victims to *apply* to a line of credit, placing the entire line squarely within the offense conduct. *See* Plea Agmt. at 9 (doc. 99). Finally, the government noted in its motion that the updated proposed restitution order is identical to the orders imposed upon Pinto's co-conspirators. Gov't Br. at 1 n.1 (doc. 123).

Based on the foregoing discussion, I determine that the government provided a "reasonable estimate" of the losses that Pinto has caused to his victims. *See United States v. Germosen*, 139 F.3d 120, 130 (holding that "the quantity and quality of evidence the district court may rely upon to determine the amount of loss is the same" for calculating Sentencing Guidelines and restitution). Accordingly, I adopt the government's proposed restitution order, which is appended to this Order as Exhibit A.

C.  Restitution Payment Schedule

I have considered all of the evidence regarding Pinto's financial circumstances and ability to pay, including the documents attached to his presentence report.

Pinto is currently serving two concurrent prison sentences. Although he gained significant income through his illegal scheme, those gains have been overtaken by considerable debts. Pinto is also married and has two young children.

Given those limitations on Pinto's ability to pay, I determine that a schedule of periodic payments is appropriate for his restitution obligations. Accordingly, to the extent he has not already done so, Pinto is ordered to relinquish any and all profits he made from his illegal scheme.  Beginning immediately upon entry of this Order, he shall also pay 20% of his gross personal income on a monthly basis, but no less than $500 per month, to the Clerk of Court until the amount he owes is satisfied.

Payment may be made in the form of cash, check or money order. All payments by check or money order shall be made payable to the "Clerk, United States District Court," and each check shall be delivered to the United States District Court, Attention: Clerk's Office, 915 Lafayette Boulevard, Bridgeport, CT 06604, as required by 18 U.S.C. § 3611. Pinto shall write

the docket number of this case on each check delivered to the Clerk's Office. Any cash payments shall be hand delivered to the Clerk's Office using exact change, and shall not be mailed.

The Clerk shall make a pro rata distribution as specified by Exhibit A: first, pro rata distribution shall be made to the debtor victims, then to the investor victims, and finally to the client victims. Payments shall be made in accordance with the District's Standing Order on the Disbursement of Restitution Payments by the Clerk of Court.

       i.    *Additional Collection Provisions*

Pinto shall notify the Court, the United States Probation Office (during any period of probation or supervised release), and the United States Attorney's Office, of any material change in his economic circumstances that might affect his ability to pay restitution in accordance with 18 U.S.C. § 3664(k). Pinto shall notify the Court, the United States Probation Office (during any period of probation or supervised release), and the United States Attorney's Office, of any change in address.

Nothing in this order shall prevent the Bureau of Prisons from implementing restitution payments in accordance with its Inmate Financial Responsibility Program ("IFRP"), 28 U.S.C. § 545.10 et seq. up to the maximum amount permitted under the IFRP guidelines. Furthermore, nothing in this order shall prevent the victims or the United States from pursuing immediate collection through civil remedies allowed by law in accordance with 18 U.S.C. § 3664(m).

Pinto shall pay toward any restitution still owed the value of any substantial resources he receives from any source during the period of incarceration, including inheritance, settlement or other judgment in accordance with 18 U.S.C. § 3664(n).

The liability to pay restitution shall terminate the later of 20 years from the entry of this judgment or 20 years after Pinto's release from prison, or upon his death.

So ordered.

Dated at Bridgeport, Connecticut, this 22nd day of December, 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge